\*E-Filed 1/24/12\*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANGELO ESCALANTE,

    Petitioner,

    v.

G. LEWIS,

    Respondent.

No. C 10-4417 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the petition is DENIED.

## BACKGROUND

Petitioner seeks relief from a prison disciplinary proceeding that resulted in the forfeiture of 30 days of good time credits. According to the petition, in 2008, officials at Pelican Bay State Prison ("PBSP") found petitioner guilty of promoting gang activity within the prison, and imposed the consequent punishment of forfeiting good time credits. The charges arose from the following incident: in 2008, a Pelican Bay correctional officer,

during a contraband watch, seized a document entitled "Overall Manpower Roster" from the cell of a Northern Hispanic ("NH") inmate who was not petitioner, though his full name did appear on the roster. In addition to his name, the list contained petitioner's prisoner identification number, moniker, tier name, hometown, gang set, commitment offense, prison sentence, release date, date of birth, and age. (Ans., Ex. 3 at 1.) The document was determined by prison gang specialists to be a roster of Northern Structure prison gang. PBSP subsequently charged petitioner with promoting gang activity.

At the resulting disciplinary hearing, Security Squad Officer Drown, who has four years of experience in the security squad, testified that petitioner would have provided the detailed information to the gang by way of a "new arrival questionnaire," a document given by the gang to all NH gang members on arrival. Drown testified that only members in good standing would have been listed on the roster and only NH gang members' names appeared on the seized roster. Correctional Officer J. Hernandez, who has over four years of experience on the security squad, testified that gang members freely fill out the questionnaires upon arrival at a prison, and the gang uses such information to conduct background checks. Correctional Officer Cleary, the reporting officer, testified that the information on the roster was "very accurate" when compared to institutional records. (*Id.* at 2.) The hearing officer found petitioner guilty of promoting gang activity based on his supplying his personal information to gang affiliates. Petitioner sought, but was denied, relief on state review. This federal petition followed.

As grounds for federal habeas relief, petitioner alleges that (1) the guilty finding is not supported by some evidence, in violation of his right to due process; (2) he received insufficient notice of the charges, in violation of his right to due process; and (3) his right to equal protection was violated by the prison officials' alleged racism.

## DISCUSSION

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

### I. Evidentiary Support for the Verdict

Petitioner claims that the prison disciplinary verdict is constitutionally invalid because (A) it is unsupported by the record, and (B) was based on a document, i.e., the roster, not disclosed to petitioner. The revocation of good-time credits does not comport with due process unless the findings of the prison disciplinary board are supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985). There must be some indicia of reliability of the information that forms the basis for prison disciplinary actions. *See Cato v. Rushen*, 824 F.2d 703, 704–05 (9th Cir. 1987). Reliability may be established by: (1) the oath of the investigating officer appearing at the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an *in camera* review of the documentation from which credibility may be assessed. *See Zimmerlee v. Keeney*, 831 F.2d 183, 186–87 (9th Cir. 1987). Review of the reliability determination should be deferential. *Id.*

Petitioner has not shown that the disciplinary decision violated his constitutional rights. As to (A), the record contains some reliable evidence to support the Board's decision. The roster included information regarding petitioner that was relevant to gang affiliates (e.g., place of origin and monikers), and this information appeared on a list of NH gang associates. The reliability of this information was based on the testimony of correctional officers, who asserted that because the roster was contraband, it was prepared for use by the gang, and not for prison officials. Such a record supports the conclusion that the hearing and the verdict comported with the requirements of due process as established by *Hill* and *Zimmerlee*.

As to (B), petitioner has not shown that nondisclosure of a copy of the roster itself violated his right to due process. As stated above, the existence and reliability of the information was affirmed through testimony, and the hearing officer's examination of the

evidence. The nondisclosure of information deemed confidential is often necessary to meet prison safety concerns, and has been found constitutional, provided that there are, as here, indicia of reliability. *See Zimmerlee*, 831 F.2d at 186 (if the information relied upon by the disciplinary committee are the statements of an unidentified informant, due process requires that the record contain some factual information from which the committee can reasonably conclude that the information was reliable and a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name.)

In his traverse, petitioner contends that case law supports his contention that the roster is unreliable. The two most relevant cases petitioner cites, *Cato v. Rushen*, 824 F.2d 703 (9th Cir. 1987) and *Lira v. Cate*, No. 00-00905, 2010 WL 727979 (Feb. 26, 2010 N.D. Cal.), are not on all fours with the facts of the instant matter. In *Cato*, the Ninth Circuit concluded that the informant evidence adduced to justify placing the plaintiff in administrative segregation did not meet *Hill*'s some evidence standard because it was uncorroborated and unreliable. Specifically, the informant had no first-hand knowledge of the plaintiff's possible involvement in an alleged plan to take hostages, and the reliability of another informant's information was undercut heavily by the results of a polygraph test, which indicated deception on the informant's part. *Cato*, 824 F.2d at 704–05. In *Lira*, the district court concluded that the plaintiff's inclusion on a "laundry list" of gang members given by an informant to a correctional officer as part of debriefing did not meet the *Hill* standard. (In this context, "laundry list" refers to "the list at the end of a debriefing report in which a debriefing inmate simply names inmates that are associated with the gang and provides their rank.")[1] The district court concluded that (1) there was no attempt to corroborate this information, and (2) there was no way to determine when such lists were compiled or by whom, as such lists are passed around within the prison system from gang member to gang member. Expanding on this second point, the district court, relying on *Cate*, held that:

---

[1] *Lira v. Cate*, No. 00-00905 (N.D. Cal. Sept. 30, 2009).

> The Ninth Circuit has recognized in a similar context that an inmate statement relayed to correctional officials by a confidential informant with no firsthand knowledge of the statement was insufficient to constitute "some evidence" supporting gang validation. *See Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). Here, there was no independent assessment or corroboration of plaintiff's inclusion on the laundry list, and thus this piece of evidence is inherently unreliable.

*Lira v. Cate*, No. 00-00905 (N.D. Cal. Sept. 30, 2009).

These cases are inapposite to the claims presented in the instant matter. Here, the roster's reliability is reasonably based on the fact that it was seized as contraband, and therefore was not prepared by an informant for correctional officers as part of a debriefing, as was the situation in *Lira*, and suspect thereby because it was an attempt to curry favor with prison officials. It can reasonably be inferred from the circumstances surrounding the seizure of the document that it was prepared secretly and for use by gang affiliates. With the roster's reliability established, petitioner's name appearing on the list does constitute some evidence of gang affiliation and promotion. Unlike the information at issue in *Cato*, here it was based on first-hand knowledge obtained from the listed inmates themselves, according to the testimony of correctional officers. On such a record, petitioner's claim is DENIED.

## II. Procedural Due Process

Petitioner's assertion that he was denied procedural due process is in truth a reiteration of his claim regarding the nondisclosure of the roster. As such, it must be DENIED. Furthermore, even if petitioner had adequately stated a claim for procedural due process, the record reflects that he was afforded all procedural process due under the Constitution. There are five procedural requirements of due process for prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary

action." *Id.* Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Fifth, "[w]here an illiterate inmate is involved . . . or whether the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . .to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." *Id.* at 570.

Petitioner admits that he received notice of and attended the hearing, and was afforded the opportunity to respond to the charges, and present a defense. Also, the record demonstrates that petitioner received all procedural protections due to him. Petitioner's assertion that the notice he was given as to the nature and evidence of the charges was contrary to that presented at the hearing is not supported by the record or petitioner's own statements. Accordingly, the claim is DENIED.

### III. Equal Protection

Petitioner contends that the testimony of the correctional officers at the hearing was racially discriminatory in violation of his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment prohibits the arbitrary and unequal application of state law, "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Petitioner has not shown that the process or the decision resulting from that process violated his right to equal protection. Rather, he poses conclusory allegations that because race was mentioned, he was treated differently than other similarly-situated inmates. The mere fact that race was mentioned during the process does not, without more, constitute a claim for an equal protection violation. Race was appropriately, and incidentally, mentioned at the hearing as it was alleged that petitioner was a member of the NH gang. Based on the foregoing, petitioner's claim is DENIED.

**CONCLUSION**

The state court's adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED**.

DATED: January 24, 2012

RICHARD SEEBORG
United States District Judge